# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>A black T-Mobile Revvl cellular telephone with an unknown associated telephone number (IMEI: 354133101469246), contained within a "Otter Box" brand protective case | **AFFIDAVIT OF SPECIAL AGENT ANTHONY COLON IN SUPPORT OF SEARCH WARRANT**<br><br>'21 MJ02254 |

I, Special Agent Anthony Colon, being duly sworn, hereby state as follows:

## I
## <u>INTRODUCTION</u>

1.     This affidavit supports an application for a warrant to search the following device more specifically described in Attachment A (incorporated herein):

a.     A black T-Mobile Revvl cellular telephone with an unknown associated telephone number (IMEI: 354133101469246), contained within a "Otter Box" brand protective case, believed to be used by David Lamont HILL (the "**Target Device**").

2.     I respectfully submit that the facts contained below demonstrate that there is probable cause to believe that fruits, instrumentalities, and evidence of a violation of the following offenses: Title 18, U.S.C., Section 922(g)(1) – Felon in Possession of a Firearm; Title 18 U.S.C Section, Aiding and Abetting; and Title 18 U.S.C. Section 371, Conspiracy (the "**Target Offenses**"), as described more specifically in Attachment B (incorporated herein).

//
//

## II

## AFFIANT'S EXPERIENCE AND TRAINING

3.      I am a Special Agent (SA) Criminal Investigator for the United States (US) Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed by the ATF since January of 2018. I am a graduate of the ATF Academy in Brunswick, GA, where I was trained for approximately 16 weeks in the various aspects of conducting firearms related criminal investigations. In August of 2018, I was sworn as an ATF SA and have since been assigned to the ATF San Diego Field Office.

4.      I am currently assigned to the San Diego County Sheriff's Department (SDSD) East County Regional Gang Task Force (ECRGTF), and have been so assigned since November of 2019. The ECRGTF is comprised of the Federal Bureau of Investigations (FBI), Homeland Security Investigations (HSI), San Diego County District Attorney's Office, and Detectives from National City Police Department, California Highway Patrol, and SDSD, who primarily investigate street gangs' illegal narcotics and firearm trafficking, distribution and possession, as well as other criminal activity, in and around the Eastern San Diego, California area.

5.      As a SA of the ATF, I have participated in over 30 firearm-related investigations of alleged criminal violations of the Gun Control Act and National Firearms Act. I have received substantive advanced training pertaining to the investigation of various crimes, which arise from firearms possession and trafficking. I have participated in undercover investigations involving the purchase of firearms, executed search warrants for firearms, and have conducted numerous surveillances in connection with firearm investigations.

6.      Based on my training and experience as a law enforcement officer and in consultations with other law enforcement officers experienced in illegal firearms possession, trafficking, drug dealing, and trafficking investigations, I am also aware that:

a.     Individuals involved in the illegal possession, acquisition, distribution, and trafficking of firearms will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.     Individuals involved in the illegal possession, acquisition, distribution, and trafficking of firearms and their accomplices will use cellular telephones to coordinate with each other, contact their buyers and suppliers, and negotiate the purchase or sale of their illegal merchandise;

c.     Individuals involved in the illegal possession, acquisition, distribution, and trafficking of firearms and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their buyers or suppliers will arrive at predetermined locations;

d.     Individuals involved in the illegal possession, acquisition, distribution, and trafficking of firearms will use cellular telephones to direct buyers or suppliers to synchronize an exact drop-off and/or pick-up time of their illegal merchandise;

e.     Individuals involved in the illegal possession, acquisition, and/or trafficking of firearms will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f.     The use of cellular telephones by individuals involved in the illegal possession, acquisition, and trafficking of firearms, tend to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

7.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated

by a person involved in the illegal possession or acquisition of firearms or a drug dealer's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

8.     Based upon my experience and training, consultation with other law enforcement officers experienced in firearms and controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the **Target Offenses**, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, videos, pictures, and other digital information, are stored in the **Target Device**.

### III.

### PROBABLE CAUSE

**A.     Introduction and Investigative Background**

14.     On October 9, 2020, at approximately 1:03 AM, San Diego Sheriff's Department (SDSD) Deputies observed two vehicles engaged in a street race in the area of South Second Street and East Washington Avenue in El Cajon, CA, within the Southern District of California. Deputies conducted a traffic stop on one of the vehicles, a white Chevrolet Camaro, bearing temporary license plate number AU99N47, for a violation of California Vehicle Code 23109(a)- Speed Contest.

15.     During the course of the traffic stop, a SDSD Deputy observed the handle of a firearm protruding from a laptop bag in the back seat of the vehicle. Upon seeing the firearm, Deputies ordered the driver, later identified as David Lamont HILL, and his passenger, later identified as Echo Bracy, to exit the vehicle. After multiple refusals, both occupants ultimately exited the vehicle and were detained pending further investigation.

16.     Shortly thereafter, Deputies removed the laptop bag from the back seat of the vehicle and discovered a Century Arms, Micro Draco model, AK-type pistol bearing serial number PMD-12419-19. There was no round loaded in the chamber of the firearm, however the firearm was loaded with a full, 30-round magazine.

17.     Subsequent law enforcement queries conducted by the investigating SDSD

Deputies revealed that HILL was a multi-convicted felon and was on parole. Bracy did not have an arrest record in San Diego County.

18.   While on scene, Bracy provided a voluntary statement to SDSD Deputies. Bracy stated that she lived in Arizona and had been in San Diego for approximately two weeks. HILL picked her up from her hotel room and they were on their way to a Casino when Deputies conducted the traffic stop on them. Bracy claimed that she did not have any knowledge of there being a firearm in the vehicle and that the only items in the vehicle she owned were the personal items in her lap.

19.   Ultimately, as a result of the investigation conducted that day, HILL was arrested on a California State felon in possession of a firearm/ammunition charge and was subsequently booked into the custody of the San Diego County Sheriff's Department at the San Diego County Jail. Since that time, on October 30, 2020, Magistrate Judge Daniel E. Butcher signed a criminal complaint (20-MJ-4699) charging HILL for being in violation of Title 18, U.S.C., Section 922(g)(1) – Felon in Possession of a Firearm.

20.   Following his arrest, HILL declined to provide a statement

21.   A preliminary inspection of the firearm indicates that it was made outside of California and had thus traveled in interstate commerce

22.   Review of the body worn camera video indicates that the **Target Device** was found on HILL's person, specifically in his pants pocket, during the pat down search on the date of the incident. Therefore I believe the **Target Device** belongs to and was used by HILL, and will provide additional evidence into the suspected illegal possession of a firearm by a convicted felon. Given this, I request permission to search the **Target Device** for items listed in Attachment B beginning on **July 9, 2020, up to and including October 9, 2020**.

## IV

## METHODOLOGY

23.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within **Target Device** and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or even months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//
//

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

26.     On April 21, 2020, United States Magistrate Judge Andrew Schopler approved and signed a Federal Search Warrant (21-MJ-01476) regarding Target Device.

27.     During the allotted period of execution of the prior search warrant, the required specialist, equipment, and software were not available to extract the information and data from the **Target Device** within the time allotted by the original warrant. Therefore, the United States is seeking this current warrant.

## **CONCLUSION**

28.     Based on all of the facts and circumstances described above, there is probable cause to conclude that the Defendant used the **Target Device** to document a violation of Title 18, U.S.C., Section 922.

29.     Because the **Target Device** was promptly seized during the investigation of Defendants' distribution activities and has since been securely stored, there is probable cause to believe that evidence of illegal activities committed by the Defendant continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from **July 9, 2020, up to and including October 9, 2020**.

30.     WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A-1 and the seizure of items listed in Attachment B using the methodology described above.

I declare under penalty of perjury that the foregoing is true and correct.



_____
Anthony D. Colon - Affiant
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 4th day of June 2021.

3rd

_____
Honorable Linda Lopez
United States Magistrate Judge